**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

HECTOR LUIS HERNANDEZ-
FERNANDEZ;

      *Petitioner*,

                                       **Case No. 5:25-CV-00773-JKP**

v.

TODD M. LYONS, ACTING DIREC-
TOR OF US ICE; MIGUEL VER-
GARA, SAN ANTONIO FIELD OF-
FICE DIRECTOR, US IMMIGRATION
AND CUSTOMS ENFORCEMENT;
KIKA SCOTT, SENIOR OFFICIAL
PERFORMING THE DUTIES OF THE
DIRECTOR AT USCIS; UNITED
STATES DEPARTMENT OF HOME-
LAND SECURITY, DHS; UNITED
STATES CITIZENSHIP AND IMMI-
GRATION SERVICES, USCIS; AND
WARDEN, SOUTH TEXAS ICE PRO-
CESSING CENTER,

      *Respondents*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

    Before the Court is Petitioner Hector Luis Hernandez-Fernandez's ("Hernandez-Fernandez") Petition for Writ of Habeas Corpus, (*ECF No. 1*). Respondents filed a Response, (*ECF No. 8*), to which Hernandez-Fernandez filed a Reply, (*ECF No. 9*). At the Court's request, the parties also submitted supplemental briefing, (*ECF Nos. 10, 11, 12*). Upon consideration, Hernandez-Fernandez's Petition for Writ of Habeas Corpus, (*ECF No. 1*), is granted in part.

# BACKGROUND

Petitioner Hector Luis Hernandez-Fernandez ("Hernandez-Fernandez") is a native and citizen of Cuba. *ECF No. 1 at 4; ECF No. 9-1 at 9.*

On July 3, 2022, Hernandez-Fernandez entered the United States without inspection near Eagle Pass, Texas. *ECF No. 1 at 4; ECF No. 9-1 at 2.* On July 5, 2022, U.S. Immigration and Customs Enforcement ("ICE") released Hernandez-Fernandez from custody via an Order of Release on Recognizance ("OREC"). *ECF No. 8 at 3; ECF No. 9 at 2; ECF No. 9-1 at 3–5.*

The OREC states: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions." *ECF No. 9-1 at 3.* Among other conditions, he was ordered to report for hearings and interviews as directed, to surrender for removal if ordered, and to comply with local, state, and federal law. *Id.*

In early July 2025, ICE detained Hernandez-Fernandez when he appeared at a routine check-in appointment. *ECF No. 1 at 4; ECF No. 8 at 3; ECF No. 9 at 2.*

On July 7, 2025, Hernandez-Fernandez filed the instant Petition for Writ of Habeas Corpus before the Court. *ECF No. 1.*

On July 16, 2025, following Hernandez-Fernandez's request for a custody redetermination, Immigration Judge Kevin Terrill issued his Order finding Hernandez-Fernandez subject to mandatory detention under 8 U.S.C. § 1225(b) and ineligible for release on bond under 8 U.S.C. § 1226(a). *ECF No. 8 at 3; ECF No. 8-1; ECF No. 9 at 2.* Due to this, Immigration Judge Kevin Terrill determined he "does not have jurisdiction over [Hernandez-Fernandez's] custody status." *ECF No. 9-1 at 12.*

Immigration Judge Kevin Terrill determined he "does not have jurisdiction over [Hernandez-Fernandez's] custody status" based on a recent Board of Immigration Appeals ("BIA") decision. *See Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025) (treating an individual encountered by DHS "approximately 5.4 miles away from a designated port of entry and 100 yards north of the border" as a noncitizen "who arrives in the United States" under § 1225 because they are "apprehended just inside the southern border, and not at a point of entry, on the same day they crossed into the United States") (citation modified).

On July 28, 2025, Hernandez-Fernandez filed a Notice of Appeal of the Bond Decision with the BIA. *ECF No. 8 at 3; ECF No. 8-1; ECF No. 9 at 2*. The appeal remains pending at the BIA. *ECF No. 9 at 2*.

On September 25, 2025, due to significant similarities in this case and a case recently decided by United States District Judge for the Western District of Texas Kathleen Cardone—*Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025)—involving Respondent's same counsel, Lacy L. McAndrew, the Court ordered the parties submit separate supplemental briefings. *ECF No. 10*. Specifically, the Court ordered the parties to address (1) what, if any, factors distinguish Hernandez-Fernandez's case from Lopez-Arevelo's; and (2) why the Court should not reach the same outcome as Judge Cardone in the instant case. *Id.*

In Respondents' Supplemental Briefing, Respondents do not point to facts distinguishing the two cases but instead argue *Lopez-Arevelo* "[did] not adequately explore relevant and persuasive decisions finding no violations in other mandatory detention contexts." *ECF No. 12 at 17*. Respondents acknowledge these other "relevant and persuasive decisions . . . involved criminal

aliens detained under [8 U.S.C.] § 1226(c), as opposed to applicants for admission under [8 U.S.C.] § 1225(b)." *Id. at 19 n.6.*

## LEGAL STANDARD

The Court may grant a writ of habeas corpus to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The petitioner "bears the burden of proving that he [or she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his [or her] burden of proof by a preponderance of the evidence." *Villanueva v. Tate*, No. 4:25-CV-03364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citations omitted).

A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." *Id.* (citing 28 U.S.C. § 2243). When the Court finds a petitioner's constitutional rights have been violated, the petitioner is entitled to the issuance of the writ. *Id*.

## ANALYSIS

Hernandez-Fernandez seeks a writ of habeas corpus for his immediate release from custody, arguing that Respondents are violating his due process rights by denying him a meaningful opportunity to seek bond. *See, generally, ECF No. 1; ECF No. 9 at 2*. Respondents argue: (1) the Court lacks jurisdiction to adjudicate Hernandez-Fernandez's custody; (2) Hernandez-Fernandez's claims are premature for failure to exhaust administrative remedies; and (3) Hernandez-Fernandez's due process rights have not been violated. *See ECF No. 8 at 3–7*.

### I.    Jurisdiction

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024); *see also United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

4

83, 101, (1998)). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Several sections of the Immigration and Nationality Act ("INA"), codified in 8 U.S.C ch. 12 § 1101 et seq., curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

In their Response, Respondents appeal to four such jurisdiction-stripping provisions here: 8 U.S.C. § 1252(g), § 1252(a)(5), § 1252(b)(9), and § 1226(e). *ECF No. 8 at 3–5; ECF No. 12 at 11–13*. All four eliminate or severely limit the jurisdiction of federal district courts to consider habeas petitions filed by noncitizens in immigration detention, but each provision is triggered by challenges to different agency decisions.

## A.     § 1252(g)

§ 1252(g) prohibits federal district courts from considering "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Thus, § 1252(g) applies only "to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (quoting *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)).

The statute "does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate [§] 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *accord Kong v. United States*, 62 F.4th 608, 617–18 (1st Cir. 2023) (collecting cases).

Here, as in *Lopez-Arevelo*, Hernandez-Fernandez is not challenging Respondents' decision to execute a removal order, and the record does not indicate there is a removal order to execute. Nor is Hernandez-Fernandez challenging Respondents' decision to commence or adjudicate his removal proceedings. Here, instead, he challenges his ongoing detention. Hernandez-Fernandez is enforcing his constitutional right to due process in the context of the removal proceedings—not the legitimacy of the removal proceedings or any removal order. Such claims are not barred by § 1252(g). *E.g.*, *Vraj Dilipbhai Patel v. Jeff Tindall, et al.*, No. 3:25-CV-00373, 2025 WL 2823607, at *2 (W.D. Ky. Oct. 3, 2025) (collecting cases); *Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828, at *4–5 (W.D. Tex. Sept. 22, 2025); *Lopez Santos v. Noem*, No. 25-CV-01193, 2025 WL 2642278, at *2–3 (W.D. La. Sept. 11, 2025).

**B.     § 1252(a)(5)**

§ 1252(a)(5) is a narrowly applicable provision, which "specifies that the only means of obtaining judicial review of a final order of removal, deportation, or exclusion is by filing a petition with a federal court of appeals." *Duarte v. Mayorkas*, 27 F.4th 1044, 1051 (5th Cir. 2022).

§ 1252(a)(5) is a "zipper clause," *id.* at 1056 (quoting *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018)), which "funnel[s] judicial review of final deportation orders . . . into a single mechanism," *id.* Thus, where there is no final removal order and a habeas petitioner's "arrest and detention claims are independent of any future removal order," § 1252(a)(5) does not prevent the

district court from hearing such claims. *Medina v. U.S. Dep't Homeland Security*, No. 17-CV-00218, 2017 WL 2954719, at *15 (W.D. Wash. Mar. 14, 2017); *accord Jennings*, 583 U.S. 281, 320 (2018) (Thomas, J., concurring) (describing § 1252(a)(5)'s narrow applicability to support a broader reading of a separate jurisdiction-channeling provision, § 1252(b)(9)).

Here, as stated above, the record does not indicate there is a removal order to execute. With no final order of removal, § 1252(a)(5) poses no jurisdictional bar. *See Duarte*, 27 F.4th at 1051, 1056; *e.g.*, *Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828, at *4 (W.D. Tex. Sept. 22, 2025).

## C.    § 1252(b)(9)

§ 1252(b)(9) is another narrowly applicable provision, providing:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien from the United States under this subchapter [including §§ 1225 and 1226] shall be available only in judicial review of a final order under this section.

*Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018) (citing 8 U.S.C. § 1252(b)(9)) (emphasis added).

The Supreme Court, in *Jennings v. Rodriguez*, declined to apply an expansive interpretation of "arising from" and held that § 1252(b)(9) did not present a bar to reviewing the immigration habeas petitioners' challenge to their mandatory detention. *Jennings*, 583 U.S. at 293. The Supreme Court found an expansive interpretation of "arising from" would make "claims of prolonged detention effectively unreviewable." *Id.* at 293.

In rejecting the premise that § 1252(b)(9) does present a bar because "detention *is* an 'action taken . . . to remove' an alien," *see id.* at 318 (Thomas, J, concurring), the plurality explained that, "[t]he question is not whether *detention* is an action taken to remove an alien but wheth-

7

er *the legal questions* in this case arise from such an action," *id.* at 295 n.3.The plurality opinion held that the legal questions of whether mandatory detention without a bond hearing was proper were "too remote from [removal actions] to fall within the scope of § 1252(b)(9)." *Id.*

In 2019, a plurality of the Supreme Court again found that § 1252(b)(9) did not strip it of jurisdiction to hear a group of immigrants' challenges to their mandatory detention under 8 U.S.C. § 1226(c). *See Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Here, while Respondents argue repeatedly that Hernandez-Fernandez is challenging "the government's initial decision or action to detain him," this does not reflect the claims for relief sought in Hernandez-Fernandez's Petition. *ECF No. 1 at 5; ECF No. 8 at 4; ECF No. 12 at 15–16*. Respondents' argument seizes on dicta in the *Jennings* opinion. There, in the course of rejecting the concurrence's jurisdiction-stripping conclusion, the Court noted the detainees in that case asked only for a bond hearing following prolonged detention, but did not challenge the very fact of their detention in the first place. *Jennings*, 583 U.S. at 294–95. Even more recently, a majority of the Supreme Court characterized *Jennings* as holding that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . .  removability will be determined.'"*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19(2020). The *Regents* opinion omitted *Jennings*' reference to the possibility that detainees' challenges to "the decision to detain them in the first place" may also be barred by § 1252(b)(9).

Respondents' argument is also foreclosed by post-*Jennings* Fifth Circuit decisions. In 2022, that court stated "where review of any agency determination involves neither a determination as to the validity of [a noncitizen's] deportation orders or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a

bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022). The Court notes Respondents wholly fail to address *Duarte* in both their Response and Supplemental Briefing. *ECF Nos. 8, 12*.

Many other courts have specifically found that § 1252(b)(9) does not present a jurisdictional bar to habeas challenges to immigration detention. *See, e.g., Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Escalante v. Noem*, No. 25-CV-00182, 2025 WL 2206113, at *2–3 (E.D. Tex. Aug. 2, 2025); *Ayobi v. Castro*, No. 5:19-CV-01311-OLG, 2020 WL 13411861, at *3 (W.D. Tex. Feb. 25, 2020); *cf. Kong v. U.S.*, 62 F.4th 608, 614–16 (1st Cir. 2023) (finding plaintiff's Federal Tort Claims Act lawsuit challenging unlawful detention not barred by § 1252(b)(9) for the same reasons a habeas petition is not barred).

Hernandez-Fernandez is not challenging: an order for removal, the process by which his removability will be determined, or the exercise of discretion by the Respondents to detain him. Hernandez-Fernandez has brought this habeas action to challenge the constitutionality of the statutory framework by which Respondents contend his detention without an individualized bond hearing is mandatory. This challenge is properly within this Court's habeas jurisdiction. *See Jennings*, 583 U.S. at 291–96 (analyzing habeas jurisdiction to challenge detention without an individualized bond hearing).

D.    § 1226(e)

§ 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). § 1226(e) does not preclude "challenges [to] the statutory framework that permits [the alien's] detention without bail." *Id.* (citing *Demore*, 538 U.S. at 517). In other words, the

Court "retain[s] jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005); *accord Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) (citing *Baez v. Bureau of Imm. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005)).

Hernandez-Fernandez claims Respondents' decision to detain him indefinitely without an individualized bond hearing violates his right to procedural due process. *See, generally, ECF No. 9*. Immigration Judge Kevin Terrill determined he "does not have jurisdiction over [Hernandez-Fernandez's] custody status." *ECF No. 9-1 at 12*. This is unlike a case in which a bond hearing was held, an individualized assessment was made regarding the appropriateness of detaining a noncitizen, and, in the Immigration Judge's discretion, they were denied bail. In such circumstances, the Court would likely lack jurisdiction to consider a collateral attack on that denial. *See, e.g., Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) ("Ultimately, Diaz Ortiz disagrees with the immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness. The Court does not have jurisdiction to hear such a challenge.").

Because Hernandez-Fernandez instead challenges the decision to subject him to mandatory detention under § 1225(b), without any process or individualized reasons, the Court can consider the merits of his constitutional claim. *See Diallo v. Pitts*, No. 19-CV-00216, 2020 WL 714274, at *5 (S.D. Tex. Jan. 15, 2020), *R. & R. adopted*, 2020 WL 709326 (Feb. 12, 2020).

## II.  Administrative Exhaustion

Respondents next argue that Hernandez-Fernandez's claim is premature because he has not exhausted his administrative remedies. *ECF No. 8 at 3–4*.

"Under the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal." *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D.

Tex. 2007); *see* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies.").

Respondents reference two cases in support of their contrary position. *ECF No. 8 at 3–4* (first citing *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018); and then citing *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14 (S.D. Tex. 2021)). *Hinojosa* involved petitioners who challenged the denials of their applications for passports at ports of entry on the grounds that they were not U.S. citizens. 896 F.3d at 309. The statute on which the *Hinojosa* court relied to require administrative exhaustion provides a system of review specific to applicants for admission who "claim[ ] a right or privilege as a national of the United States." 8 U.S.C. § 1503(b); *Hinojosa*, 896 F.3d at 314–15. Hernandez-Fernandez has made no such claim, so *Hinojosa* is entirely inapt.

*Petgrave*, however, involved far more comparable circumstances. There, the petitioner was a foreign national detained after surreptitiously entering the country. 529 F. Supp. 3d at 666, 668–69. He challenged "the constitutionality of his continued detention without a bond hearing pending the outcome of his asylum case under the Fifth Amendment's Due Process Clause." *Id.* at 669. The court found that it was not barred by principles of administrative exhaustion from considering the petition, for two reasons. *Id.* at 672 n.14. First, because his "filings raise[d] constitutional questions that 'neither [an] [Immigration Judge] nor th[e] [BIA] may rule on.'" *Id.* (citation omitted). And second, because he had appealed the Immigration Judge's bond denial to the BIA and "the appeal timeline exacerbate[d]" his alleged injury of prolonged detention. *Id.*

These reasons apply here with equal or greater force. As in *Petgrave*, Hernandez-Fernandez challenges his ongoing detention as a violation of due process. *See id*. He requested a bond hearing before an Immigration Judge, who determined that he lacked jurisdiction to hold

one. *ECF No. 9-1 at 12*. And he has appealed that decision. *ECF No. 8-1*. Requiring him to wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate his alleged constitutional injury—detention without a bond hearing. *See Petgrave*, 529 F. Supp. 3d at 672 n.14. "Bond denial appeals 'typically take six months or more to be resolved at the BIA.'" *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)). "The prevention of six months or more of unlawful detention thus outweighs the interests the BIA might have in resolving" Hernandez-Fernandez's appeal of the Immigration Judge's bond dismissal. *See id*.

Accordingly, Hernandez-Fernandez's claim is properly before the Court with no further requirement to exhaust administrative remedies.

## III.    Procedural Due Process

Turning to the merits, Respondents argue, as in *Lopez-Arevelo*, that Hernandez-Fernandez is subject to mandatory detention without a bond hearing under the plain language of 8 U.S.C. § 1225(b). *ECF No. 12 at 7*. They argue that the INA requires them to detain Hernandez-Fernandez without a bond hearing even though he was released on his own recognizance and lived in the United States for three years. *Id*. Respondents reference a September 5, 2025, BIA decision that supports their position, *In re: Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (concluding decisively that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United for longer than two years without apprehension).

In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect.[1] *See Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29,

---

[1] Many of these decisions have been made in the context of requests for preliminary injunctive relief.

2025) (collecting twelve such decisions); *see*, *e.g.*, *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *10 n.9 (D.N.H. Sept. 8, 2025). That includes courts in the Fifth Circuit. *Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278, at *5 (W.D. La. Sept. 11, 2025); *Kostak v. Trump*, No. 25-CV-01093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025).

Regardless, Hernandez-Fernandez challenges his ongoing detention on constitutional grounds, as a violation of due process—not on statutory interpretation grounds, such as through a claim under the Administrative Procedure Act. *See ECF No. 11 at 5.* Therefore, the Court need not consider whether the agency's new mandatory detention policies reflect a proper reading of the INA. The issue, instead, is whether those policies have been applied to Hernandez-Fernandez in an unconstitutional manner. *See*, *e.g.*, *Perez v. Kramer*, No. 25-CV-3179, 2025 WL 2624387, at *3 (D. Neb. Sept. 11, 2025) (declining to consider "the validity of the government's argument that [the p]etitioner should be mandatorily detained under § 1225" or the applicability of Yajure Hurtado and considering, instead, the due process question).

## A.    The Effect of *Thuraissigiam*

In that vein, Respondents argue, as in *Lopez-Arevelo*, "[Hernandez-Fernandez] is not entitled . . . to anything beyond what § 1225(b) provides him." *ECF No. 12 at 16* (*citing Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Because the effect of *Thuraissigiam* was addressed at length in *Lopez-Arevelo*, other courts across the United States have reached the same conclusion, and Respondents present identical arguments here, the Court adopts the view that the holding in *Thuraissigiam* does not foreclose Hernandez-Fernandez's due process claims which seek to vindicate a right to an individualized bond hearing. *Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828, at *7–10 (W.D. Tex. Sept. 22, 2025); *see*, *e.g.*, *Espino-*

*za v. Kaiser*, No. 25-CV-1101, 2025 WL 2581185, at *7 n.9 (E.D. Cal. Sept. 5, 2025); *Padilla v.*
*U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023).

Unlike Petitioner in *Thuraissigiam*, Hernandez-Fernandez does not challenge the admission process in any way or assert a right to remain in the United States. He merely seeks a chance to apply for release on bond pending resolution of his asylum claim that remains to be resolved in standard removal proceedings. Nothing in *Thuraissigiam* suggests Hernandez-Fernandez lacks such a due process right.

A second key point of distinction is that Thuraissigiam was stopped by Border Patrol "within twenty-five yards of the border," immediately detained, and never released. *Thuraissigiam*, 591 U.S. at 114. Hernandez-Fernandez, too, was initially detained shortly after entering the country on July 2, 2022, but unlike Thuraissigiam, he was released on his own recognizance two days later. *ECF No. 1 at 4; ECF No. 8 at 3; ECF No. 9 at 2; ECF No. 9-1 at 2–5*. Then he lived in the United States until, in early July 2025, ICE detained Hernandez-Fernandez when he appeared at a routine check-in appointment. *ECF No. 1 at 4; ECF No. 8 at 3; ECF No. 9 at 2*.

In sum, *Thuraissigiam* does not prohibit Hernandez-Fernandez from pursuing his due process claim, for two reasons. First, because he challenges his detention, not his deportability. And second, because he was detained after years of presence in the United States, rather than on the threshold of initial entry.

### B.    The *Mathews* Test

Turning, then, to the merits of Hernandez-Fernandez's procedural due process challenge, "[t]o determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1)

14

"the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-CV-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### 1.    Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests.'" *Martinez v. Sec. of Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that, because he is subject to mandatory detention under the new interpretation of § 1225(b) adopted by the BIA in *Yajure Hurtado*, Hernandez-Fernandez has no cognizable interest in his liberty. *ECF No. 12 at 7–11*. For purposes of this analysis, the Court can assume without finding that Respondents' interpretation of the law is permissible, and that people who are arrested near the border must be subjected to mandatory detention, going forward. But, as other courts have noted in considering this issue, "Respondents fail to contend with the liberty interests created by the fact that the Petitioner[ ] in this case [was] released on recognizance *prior to the manifestation of this interpretation*."[2] *e.g.*, *Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828, at *4 (W.D. Tex. Sept. 22, 2025) (citing

---

[2] Courts have long considered as-applied due process challenges to other mandatory detention provisions of the INA and found noncitizens to possess a cognizable interest in their freedom from custody. *See, e.g.*, *Gashaj v. Garcia*, 234 F. Supp. 2d 661, 666 (W.D. Tex. 2002) (finding permanent residents subject to mandatory detention due to a criminal conviction "have a fundamental right to a determination of whether their liberty interests should be impinged during the deportation process.").

*Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *10 (E.D. Cal. Sept. 5, 2025)).

This position finds support in the longstanding principle in the criminal context that due process requires a pre-deprivation hearing before the revocation of parole. *See id.* at *9 (citing *Young v. Harper*, 520 U.S. 143, 147–49 (1997)). "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Parolees thus have a protected liberty interest in their "continued liberty." *Id.* (citation omitted). A number of district courts have extended this reasoning to the immigration context and held that once released from immigration custody, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Diaz v. Kaiser*, No. 25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases); *accord M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)); *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) (same).

Because he spent nearly three years at liberty in the United States, Hernandez-Fernandez possesses a cognizable interest in his freedom from detention.

### 2.    Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez v. Sec. of Noem*, No. 5:25-CV-

01007-JKP, 2025 WL 2598379, at *3 (W.D. Tex. Sept. 8, 2025) (quoting *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). As in other recent cases, at Hernandez-Fernandez's bond hearing, "the [Immigration Judge] declined to exercise jurisdiction, finding that [the petitioner was] subject to mandatory detention under § 1225." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *11 (E.D. Cal. Sept. 5, 2025)). Such a hearing "did not in fact provide . . . an opportunity to contest the existence, nature, or significance of [any] supervision violations" or otherwise make an individualized assessment of the need to re-detain him. *See id.* Certainly, Hernandez-Fernandez has the right to appeal the Immigration Judge's jurisdictional dismissal to the BIA. And he has done so. But given the BIA's interpretation of mandatory detention in *Yajure Hurtado*, that appeal is almost certainly a futile exercise. Thus, there is a high risk that Hernandez-Fernandez has been and will continue to be erroneously deprived of his liberty.

In terms of available alternatives and their probable benefits, agency decisionmakers regularly "conduct[ ] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Because such a proceeding would give Hernandez-Fernandez the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond, it would greatly reduce the risk of an erroneous deprivation of his liberty. Therefore, the second *Mathews* factor also supports Hernandez-Fernandez's claim that he has been denied procedural due process.

### 3.    Government's Interest

On the final factor, of course, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But the decision to

release Hernandez-Fernandez on his own recognizance three years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018). And Hernandez-Fernandez did not abscond from his proceedings— ICE detained Hernandez-Fernandez when he appeared at a routine check-in appointment. *ECF No. 1 at 4; ECF No. 8 at 3; ECF No. 9 at 2*. Nor is there anything in the record to indicate that he has committed any crimes or endangered anyone during his three years at liberty in the United States. In any event, if such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing. *See Martinez v. Sec. of Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *4 (W.D. Tex. Sept. 8, 2025).

It is conceivable that the Government may assert an interest in avoiding "the incremental cost resulting from the increased number of hearings" if it must provide bond determinations to people like Hernandez-Fernandez. *Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 587, 601 (S.D. Tex. 2018) (quoting *Mathews*, 424 U.S. at 347). But such costs cannot be terribly burdensome, given the BIA concedes in *Yajure Hurtado* "[w]e acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *In re: Yajure Hurtado*, 29 I&N Dec. 216, 226 (BIA 2025); *accord Singh v. Andrews*, No. 25-CV-00801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost.") (*Doe v. Becerra*, No. 2:25-CV-00647, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). Therefore, this factor also weighs in Hernandez-Fernandez's favor.

Because all three *Mathews* factors support Hernandez-Fernandez's position, the Court finds that detaining him without any individualized assessment of his flight risk and dangerous-

ness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. This decision is supported by a growing number of district courts across the country who have found that holding people like Hernandez-Fernandez in mandatory detention without a bond hearing likely constitutes a due process violation. *See, e.g., Espinoza v. Kaiser*, No. 25-CV-01101, 2025 WL 2581185, at *11–12 (E.D. Cal. Sept. 5, 2025); *Kostak v. Trump*, No. CV 3:25-CV-01093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025); *Singh v. Andrews*, No. 25-CV-00801, 2025 WL 1918679, at *8–9 (E.D. Cal. July 11, 2025) (collecting cases).

## IV.    Scope of Relief

As to the appropriate remedy, Hernandez-Fernandez requests that he be immediately released from custody, or alternatively to order he be afforded an individualized bond hearing where Respondents bear the burden of justifying, by clear and convincing evidence, either dangerousness or flight risk. *ECF Nos. 1, 11*.

Some courts have determined that the appropriate relief for an immigration detainee held in violation of due process is the petitioner's immediate release from custody. *See, e.g., M.S.L. v. Bostock*, No. 6:25-CV-01204, 2025 WL 2430267, at *15 (D. Or. Aug. 21, 2025). But it appears that the comfortable majority position—both historically and in recent weeks—is to instead require a bond hearing before an IJ. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 46 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 & n.14 (2d Cir. 2020); *Kostak v. Trump*, No. 3:25-CV-01093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 811–12 (W.D. Tex. 2015) (collecting cases). This makes sense, given that the Court has found a *procedural* due process violation. Hernandez-Fernandez's rights are not violated by the very fact of his detention. Rather, they are violated because he has been detained

without a bond hearing that accords with due process. *See Black v. Decker*, 103 F.4th 133, 150–1 (2d Cir. 2024) (considering "whether and when due process requires that a particular detained noncitizen receive a bond hearing").

When ordering a bond hearing as a habeas remedy, some courts place the burden of proof on the noncitizen seeking release. *See, e.g., Martinez v. Hott*, 527 F. Supp. 3d 824, 838 (E.D. Va. 2021). This practice tracks the agency's own burden allocation at routine bond hearings. *See id.* (citing 8 C.F.R. § 236.1(c)(8)); 8 C.F.R. § 1003.19(h)(3). Yet, as of 2020, the "vast majority"—an "overwhelming consensus"—of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2020) (citations omitted). Allocating the burden in this manner reflects the concern that "[b]ecause the alien's potential loss of liberty is so severe ... he should not have to share the risk of error equally." *German Santos v. Warden Pike Cnty. Correctional Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (citing *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)).

The consensus appears to be holding, with many courts in recent days ordering a bond hearing, at which the Government bears the burden of justifying the immigration habeas petitioner's continued detention by clear and convincing evidence. *See, e.g., Velasquez Salazar v. Dedos*, No. 25-CV-00835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025); *Morgan v. Oddo*, No. 24-CV-00221, 2025 WL 2653707, at *1 (W.D. Pa. Sept. 16, 2025); *J.M.P. v. Arteta*, No. 25-CV-04987, 2025 WL 2614688, at *1 (S.D.N.Y. Sept. 10, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025); *Arostegui-Maldonado v. Baltazar*, No. 25-CV-02205-WJM-STV, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025).

20

Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner. *See, e.g., Salazar v. Dedos*, No. 1:25-CV-00835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court finds these decisions persuasive, especially given the IJ's conclusion that it lacks jurisdiction to hold a bond hearing for Hernandez-Fernandez. *ECF No. 9-1 at 12*. The Government is afforded one additional opportunity to do so, but if it continues to disclaim the authority to conduct an individualized assessment of the necessity of detaining Hernandez-Fernandez in accordance with this Order, then he must be immediately released.

## CONCLUSION

For the reasons stated above, Hernandez-Fernandez's Petition for Writ of Habeas Corpus, (*ECF No. 1*), is **GRANTED IN PART**.

**IT IS ORDERED** that, **on or before October 31, 2025 at 5:00 p.m.**, the Respondents shall either: (1) provide Hernandez-Fernandez with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Hernandez-Fernandez's continued detention; or (2) release Hernandez-Fernandez from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before October 31, 2025 at 5:00 p.m.**, the Respondents shall **FILE** notice informing the Court whether Hernandez-Fernandez has been released from custody. If Hernandez-Fernandez has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the Immigation Judge's decision.

**There will be no extensions of the October 31, 2025, deadlines**.

It is so ORDERED.
SIGNED this 21st day of October, 2025.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE